Booth, Judge,
delivered the opinion of the court:
The plaintiff was a city letter carrier attached to the post office at Chico, California. His salary was $1,100 per year. On August 24, 1912, the postmaster at Chico preferred in writing a number of charges against the plaintiff, involving various derelictions, which he thought sufficient to result in his removal. On August 27th the plaintiff answered the charges, and the controversy thus reduced to issue was duly forwarded to the First Assistant Postmaster General at Washington. An investigation through the instrumentality of post-office inspectors followed, resulting finally in a written order signed by the First Assistant Postmaster General dismissing the plaintiff from the service. A written notice to this effect was dispatched to the local postmaster on November 1, 1912. Later, on December 7, 1912, the action of the First Assistant Postmaster General was officially approved by the Postmaster General. Almost three'years later, through the persistence of the plaintiff and his friends, the plaintiff’s case was again reviewed by the Postmaster General, resulting in the Executive order of the President, set forth in Finding IV, whereby plaintiff was reinstated in the classified service. Subsequent to this order the plaintiff was reinstated as a substitute carrier, his reinstatement dating from May 19, 1915. It so happened that there was nothing for him to do as a substitute carrier at the Chico post office,. so he was reinstated as a regular letter carrier and assigned to duty in the post office at Sacramento, California, on August 1,1915, but at a reduced salary, viz: $800 per annum.
The plaintiff’s suit is for the full amount of his salary from November 5, 1912, the date when he was officially detached from the service, to August 1, 1915, and the further sum of $290.16 the difference between' the salary he was receiving at the date of his dismissal and the salary of $800 per annum paid to him subsequent to his transfer to Sacramento *179 until July 1, 1916, when his former salary of $1,100 was restored.
The plaintiff’s case rests upon an alleged illegal removal from office, and in view of the decisions of this court involves but a single issue; that is, Did the First Assistant Postmaster General have power and authority under the law to dismiss him or must it have been done by the Postmaster General himself?
It was conceded on the argument of the case that this court was without jurisdiction to review the record or otherwise pass upon the same, as made up under section 6 of the act of August 24, 1912, 37 Stat., 555, involving the written accusations and answers thereto. If the statute was in this respect complied with, jurisdiction to consider the truth or falsity of the charges and weigh the testimony with respect thereto belongs to the proper officials of the proper department and not to the court. The proof shows a full compliance with the statute in this respect; and if the First Assistant Postmaster General was the proper official under the law to act, or if he did act and his official orders were subsequently approved and ratified by the Postmaster General, then the plaintiff was legally removed and can not recover. The President’s Executive order of April 21, 1915, did no more than reinstate the plaintiff in the classified service. Eberlein v. United States, 53 C. Chs., 467.
Section 161 of the Revised Statutes provides:
“ The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it.”
Acting in accord with the above law, the Postmaster General did, by section 17 of the Postal Laws and Regulations, effective November 1, 1912, assign to the First Assistant Postmaster General full jurisdiction of the Free Delivery Service, including city and rural delivery carriers.
In McCollum v. United States, 17 C. Cls., 92, the late Judge Richardson had before him an issue identical in character with the one in suit. Speaking to the subject, he used this language:
*180 “ In several of the executive departments the statutes provide for assistants to the heads thereof, and also assistants and deputies to the heads of some of the bureaus. * * * The duties of these assistants are generally not specifically defined by law, but are left to the direction and regulation of superior officers. Such assistants are supposed to have the confidence of those immediately above them and to be officially engaged- in carrying out the will of their principals in the details of the work of the department or bureau in which they are employed. When their acts, decisions, or directions are reduced to writing, signed by them in their official capacity, filed or recorded among the archives of the department, and do not appear to have been revoked, annulled, or modified by the head of the department or bureau, they must be held, in the absence of fraud, mistake, or irregularity, to have been done within the scope of the authority of the assistants and to be as binding on the Government as though expressly ordered by the superior. Especially is that so when copies of such written documents are sent to this court by the head of the department in which they are found without objection on his part to their having been made in the due and regular course of business under his control.”
The McCollum case involved an inference of authority from an official act by a subordinate officer. In the instant case an express statute authorized the division and distribution of departmental affairs by the head thereof, and a positive regulation conferring the alleged lack of authority to so act. In addition to this the action of the First Assistant when brought before the head of the department for approval received the official approval of the Postmaster General himself.
It is not, we believe, necessary to dwell longer upon the issue. If the Postmaster General can not authoritatively act through his First Assistant in a matter referred to him by regulations, not inconsistent with law, but in accord therewith, then the countless details of a large and increasing department would be quite beyond the range of physical performance, and public business therein be in impossible confusion. The First Assistant Postmaster General, within the scope of his authority, acts for the department, and unless some positive law inhibits his action, or makes the personal action of the Postmaster General imperative, his conduct is binding upon the department and those dealing with him. *181 The law creating tbe offices of assistants to the Postmaster General and providing substantial salaries for the incumbents is a sufficient refutation of plaintiff’s contention, in the absence of a citation to some express statutory authority to the contrary. Parish v. United States, 100 U. S., 504.
The petition is dismissed. It is so ordered.
Gbaham:, Judge; Hat, Judge; DowNey, Judge; and Campbell, Chief Justice, concur.